**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Jerry Pinks and<br>Kathleen Wendy Pinks.<br><br><br>Debtors. | Case No. 12-00317-dd<br><br>Chapter 7<br><br><br>**ORDER** |

This matter is before the Court on the motion of creditor M&T Bank Corporation ("M&T Bank") to reopen the bankruptcy case pursuant to 11 U.S.C. § 350(b), and the objection of Debtors Jerry and Kathleen Pinks ("Debtors"). The Court held a hearing on the motion on January 7, 2015. For the reasons set forth below, having carefully considered the applicable law, evidence submitted, and arguments of counsel, the Court sustains the objection of the Debtors and denies M&T Bank's motion.

**I.    Facts and Procedural History**

The facts in this case are not in dispute. On January 20, 2012, the Debtors filed for protection under chapter 7 of the Bankruptcy Code. The Debtors scheduled a "Potential UCC Notice Claim Against M&T Bank" with an "unknown" value on their Schedule B.[1] At the § 341 meeting of creditors ("§ 341 meeting"), the chapter 7 trustee, Michelle Vieira ("Trustee"), asked the Debtors:

> Q.    Do you have any lawsuits you could file to collect money from someone else?
>
> A.    No.

---

[1] The cause of action is scheduled as joint, although the financing giving rise to the cause of action was incurred only by Mr. Pinks.

1

The Debtors' attorney, Phillip Fairbanks, then interjected:

> Mr. Fairbanks:  Excuse me, Trustee, we have listed on the schedule as they have a potential UCC notice claim. We believe that's worth about under $5,000. There's a $39,000 deficiency claim against which it would be set off.
>
> Ms. Vieira:  And I think you claimed a [$]5,000 exemption in [it] anyway, right?
>
> A.  Yes.
>
> Q.  Other than that, no other claims?
>
> A.  No.
>
> Ms. Vieira:  I'm going to declare this a no asset case and abandon the schedule[d] property and that's all the questions I have. Thank you.

M&T Bank was listed as a creditor and was notified of the bankruptcy filing but was not present at the § 341 meeting and did not otherwise participate in the bankruptcy. The Trustee filed a report of no distribution on March 2, 2012, and abandon the scheduled assets. The Debtors received a discharge on May 1, 2012.

On March 14, 2013, Mr. Pinks filed a complaint against M&T Bank concerning the UCC notification cause of action in the Southern District of New York (the "New York litigation"). The complaint pleaded statutory damages totaling $70,144.20. The parties submitted evidence showing that Mr. Pinks had signed a retainer agreement with attorneys to pursue the cause of action on April 6, 2012, and again on October 5, 2012. Both agreements provide for a 40 percent contingency fee, Mr. Pinks' promise to serve as the named plaintiff in any class action, and the possibility that the cause of action may be meritless.

M&T Bank is actively contesting the New York litigation. In its New York filings, M&T Bank has consistently indicated its awareness of the Pinks' bankruptcy. However, it was not until June 18, 2014, after the New York federal court denied M&T Bank's motion to dismiss, that M&T Bank asserted its defense that the cause of action was improperly disclosed during the

2

bankruptcy and therefore the bankruptcy case should be reopened so that the Trustee will control the cause of action.

On or about August 4, 2014, M&T Bank reached out to the Trustee and Mr. Pinks to settle the case. This prompted Mr. Fairbanks to write the Trustee on September 3, 2014, explaining his $5,000 estimate at the § 341 meeting. Mr. Fairbanks wrote that he calculated his estimate by subtracting the total deficiency, including estimated interest and attorney fees, along with the Pinks' estimated attorney fees, from the total amount of the statutory damages. Mr. Fairbanks' letter indicates that he believed his estimate at the § 341 meeting clearly involved this sort of calculation because "no reasonable attorney" would pursue this type of litigation if the $5,000 estimate was pre- attorney fees, costs, and set-off. Mr. Fairbanks also wrote that he did not believe it was relevant to the bankruptcy to disclose the fact that Mr. Pinks was considering being a named plaintiff in a class action because bankruptcy trustees cannot serve as named plaintiffs in class actions.

On October 31, 2014, M&T Bank filed this motion to reopen and argues that the cause of action should be an asset of the reopened bankruptcy estate because it was not properly disclosed by the Debtors. M&T Bank urged the Court to reopen the case, revoke the abandonment of the asset, and permit the Trustee to further investigate, and presumably ultimately administer, the cause of action. The Debtors objected to the motion, arguing that the asset was properly disclosed, and that even if disclosure was unintentionally inadequate, M&T Bank's request to reopen the case should be denied as either waived or untimely in light of M&T Bank's litigation posture in New York.

The Court held a hearing on the matter, received documentary evidence, and heard the arguments of the parties.[2] The Trustee observed the proceedings but did not take a position. She did state, however, that she did not understand Mr. Fairbanks' estimate at the § 341 meeting to include the calculations he later detailed in his letter, and that when chapter 7 debtors are involved in class action lawsuits, her office procedure is usually to keep the case open. At the close of the hearing the Court took the matter under advisement.

**II.     Discussion**

Section 350(b) permits the reopening of a bankruptcy case "on motion of the debtor or other party in interest." Fed. R. Bankr. P. 5010. The Fourth Circuit provides bankruptcy courts with wide discretion to determine when reopening a case is appropriate. *Hawkins v. Landmark Finance Company (In re Hawkins)*, 727 F.2d 324, 326 (4th Cir. 1984). The question of whether to reopen "depends upon the circumstances of the individual case." *In re Paul*, 194 B.R. 381, 383 (Bankr. D.S.C. 1995). The burden of proof is on the moving party. *In re Lee*, 356 B.R. 177, 180 (Bankr. N.D.W.Va. 2006).

When considering whether to reopen a case, courts should first determine whether one of the three grounds articulated in § 350(b) exists. *Lee*, 356 B.R. at 180. Section 350(b) of the Bankruptcy Code authorizes courts to reopen cases "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Here, M&T Bank asserts that the case should be reopened (1) to administer an asset and (2) for cause.

---

[2] The original hearing was scheduled for December 8, 2014, in Charleston. The Debtors filed a request to continue the hearing because they had recently retained new counsel and needed additional time to respond to some of the arguments raised by M&T Bank. M&T Bank opposed the continuance. The Court held a hearing on the continuance motion on December 8, 2014, and, with the agreement of the parties, continued the matter to January 7, 2014, in Columbia.

4

*A. Reopening to administer an asset*

Generally, an estate should be reopened to administer assets only if the asset was unknown at the time the case was closed. *In re Plusfunds Group, Inc.*, 492 B.R. 202, 209 (Bankr. S.D.N.Y. 2013) (citation omitted) *aff'd* 505 B.R. 419 (S.D.N.Y. 2014). If an asset was disclosed, a court may still reopen the case for the purpose of revoking abandonment of the asset[3] if disclosure was incomplete or misleading, and administering the asset through the estate would benefit the creditors. *E.g., In re Gonzalez*, 302 B.R. 687 (Bankr. E.D.Ca. 2003). A court should not necessarily infer that disclosure was incomplete or misleading when an asset later appreciates in value or is discovered to be worth more than its scheduled value. *Vasuez v. Adair (In re Adair)*, 253 B.R. 85, 89 – 91 (B.A.P. 9th Cir. 2000). Instead, a court should focus on whether the trustee knew of the asset and had the opportunity to investigate it prior to closing the case. *Id*.

Thus, for example, in *Gonzalez*, the court reopened the case and revoked abandonment when the debtor's disclosed value of her real property only represented her community property interest rather than the actual value of the property. *Gonzalez*, 302 B.R. at 690. Because there was no question at the time of the filing that both the value on the petition and the debtor's interest were incorrect, the court found that the asset was improperly disclosed. *Id.* at 692. This improper disclosure also hindered the trustee's ability to administer the estate because his decision to abandon the asset was based on incorrect information. *Id*. The circumstances therefore required reopening the case and revoking the abandonment. *Id*. at 693.

Conversely, some courts hold that when a debtor discloses a litigation claim, reasonably values it significantly lower than the eventual recovery, and the trustee declines to further

---

[3] In their briefing, the parties made much of the distinction between revoking abandonment when abandonment occurs on notice pursuant to 11 U.S.C. § 554(a), versus "technical" abandonment pursuant to 11 U.S.C § 554(c) at the close of the case. The parties agreed at the hearing that the asset was abandon pursuant to 11 U.S.C. § 554(c). The Court therefore declines to opine on whether this distinction exists and, if so, its effect here.

investigate the claim beyond the estimated value, a court should not reopen the case and revoke abandonment. *Adair*, 253 B.R. at 92. In contrast to the debtor's valuation of her real property - a value which is perhaps more readily ascertainable and verifiable - the debtor's valuation of her litigation claim is necessarily uncertain. *Wissman v. Pittsburgh Nat. Bank*, 942 F.2d 867, 871 (4th Cir. 1991) (holding that valuing litigation as "unknown" is appropriate in the context of placing a value on an exemption). A debtor's disclosure of the litigation asset as "speculative" with an unknown, uncertain, or even ultimately incorrect value is therefore consistent with the debtor's duty to disclose. *Adair*, 253 B.R. at 89 – 90 (holding that the debtor's estimated value of the litigation cause of action at $20,000 was not misleading despite the litigation eventually settling for $430,000 when the cause of action was scheduled, its value disclosed as "speculative," and the debtor's attorney answered all of the trustee's questions regarding any potential recovery).

Here, the Debtors scheduled the asset as "unknown" and provided the Trustee with an estimate at the § 341 meeting. Mr. Fairbanks' explanation of his estimate at the § 341 meeting does not lead this Court to conclude that the Trustee's ability to perform her duties was frustrated. Rather, the Trustee had an opportunity to inquire and investigate further but did not do so. In addition, the fact that Mr. Pinks retained counsel to pursue the litigation during the bankruptcy is not evidence that he intentionally misled the Trustee; nor is the fact that the damages, if any, are statutory. Liability remains uncertain. Debtors' net recovery is subject to expenses and attorney fees. The evidence shows that the Trustee had access to the information she needed to determine whether to administer the cause of action or abandon it. It would be therefore be inappropriate to reopen this case on the grounds that the asset was improperly disclosed.

### B. *Reopening for cause*

Section 350(b) also permits a court to reopen a case "for cause." The Bankruptcy Code does not define cause, leaving courts to formulate a variety of tests in search of a more precise standard. For example, some courts consider (1) prejudice to the creditor that would be affected by the reopening of the bankruptcy, and (2) whether the debtor intentionally omitted the creditor or the omission was part of a fraudulent scheme. *Paul*, 194 B.R. at 383. Others use a three-prong test, weighing (1) the benefit to the debtor; (2) the prejudice to the opposing party; and (3) the benefit to the creditors. *In re Phelps*, 329 B.R. 904, 909 (Bankr. M.D.Ga. 2005). Regardless of the formulation of the test, the underlying analysis is an equitable one, and courts should consider whether any of the parties involved in the bankruptcy would suffer a "legal fraud" if the estate is not reopened. *Reid v. Richardson*, 304 F.2d 351, 355 (4th Cir. 1962) (considering under the previous bankruptcy act whether cause existed to reopen a case when spouses filed separate, staggered bankruptcy cases to avoid their joint creditors).

Additionally, courts should consider the amount of time that has elapsed since the closing of the case. As more time elapses between the closing of the estate and the request to reopen, "so must also the cause for re-opening increase in weight." *Reid*, 304 F.2d at 355. Although time alone does not constitute prejudice, a "delay may be prejudicial when it is combined with other factors." *Matter of Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993). When parties incur costs and act in reliance on the closure and finality of the bankruptcy case, this weighs against reopening a case. *Hawkins*, 727 F.2d at 327. A court may also decline to reopen a case when the evidence shows a party had "actual knowledge" of the reason to reopen for an "inordinate length of time," yet waited until litigation commenced before moving to reopen. *Bianucci*, 4 F.3d at 529 (declining to

reopen a case to avoid a lien when the debtor had actual knowledge that the lien was still valid for at least five months after the bankruptcy was closed, yet waited until the creditor attempted to revive the lien to move to reopen). Furthermore, if the timing of the motion indicates it is a "stalling tactic" to delay state-court litigation, a court should not reopen the case. *Redmond v. Fifth Third Bank*, 624 F.3d 793, 799 (7th Cir. 2010) (upholding the bankruptcy court's denial of a motion to reopen when the motion was filed three weeks before trial in a state court foreclosure proceeding).

    The Court finds no cause to reopen this case. Ten months after the close of the bankruptcy, Mr. Pinks filed his complaint in New York. That litigation has now been moving forward for two years. The parties have incurred costs and expenses in moving it forward. The Fourth Circuit has specifically cautioned against reopening cases when parties have incurred litigation costs. *Hawkins*, 727 F.2d at 327. The Court fails to see why it should ignore that caution here.

    The Court is also wary of the timing of M&T Bank's motion on the heels of the New York court's denial of its motion to dismiss. Courts generally do not permit debtors who litigate post-bankruptcy issues with full knowledge of the bankruptcy relief available to later reopen their cases and seek relief in bankruptcy court. *E.g., Bianucci*, 4 F.3d at 529. The reason for this is clear: it would be both inequitable and inefficient to reopen cases for the purpose of permitting the party unhappy with the result of pending litigation to utilize the bankruptcy court for its benefit when it previously failed to do so. The Court again sees no reason why it should exercise its discretion to permit M&T Bank to act similarly here.[4]

---

[4] At the hearing and in its briefing, M&T Bank made much of the fact that because its deficiency claim was discharged in the bankruptcy, equity requires the Court to reopen the case so that the Debtors do not obtain the benefit of the discharge while still pursuing their cause of action. The Court does not consider this "prejudice" relevant here; under *Hawkins*, "accidental benefits" do not constitute prejudice. *Hawkins*, 727 F.2d at 327 (holding

8

Most importantly, however, it is not clear to the Court that reopening the case would be beneficial to creditors. Mr. Pinks has already incurred attorney fees that should perhaps be deducted from recovery. If the Trustee were to take over the lawsuit, she would be unable to serve as the class action plaintiff, thus potentially diminishing the value of the underlying cause of action. She would also presumably need to hire counsel to pursue the litigation, diminishing even further any recovery for the estate. Add to these costs the necessarily speculative nature of litigation and recovery, and the Court is not convinced there would be a benefit to creditors.

The parties have incurred expenses in reliance on the finality of the bankruptcy case. M&T Bank knew of the bankruptcy and its potential effect on the cause of action, yet delayed its request to reopen for nearly two years. The Court sees little potential benefit to the estate if the bankruptcy were reopened to administer the cause of action. Under these circumstances, cause does not exist to reopen.

### III.   Conclusion

The burden of proof on a motion to reopen is on the moving party. M&T Bank did not provide the Court with proof that the Trustee was either misled or that the asset was so improperly disclosed that her efforts in administering the estate were frustrated. M&T Bank has also not convinced the Court that the case should be reopened for cause. Both M&T Bank and the Pinks have been litigating this cause of action in New York for two years. M&T Bank knew of the bankruptcy yet did not seek relief from the bankruptcy court until after it received an unfavorable ruling from the district court. During the interim time period, M&T Bank, the Pinks, and the New York federal courts have spent time and/or money litigating the dispute. Reopening

---

that the fact that the creditor would lose its lien if relief was granted was not a fact relevant to the prejudice analysis).

9

this bankruptcy case now would prejudice the New York proceedings, prejudice the parties, and accord little if any demonstrated benefit to the Pinks' creditors.

For the reasons set forth above, the Court sustains the Debtors' objection to M&T Bank's motion to reopen. The motion to reopen is denied.

**FILED BY THE COURT**
**01/21/2015**



                    David R. Duncan
                    Chief US Bankruptcy Judge
                    District of South Carolina

Entered: 01/22/2015